UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
FAIRFIELD FINANCIAL MORTGAGE GROUP,

                              Plaintiff(s),        **ORDER**
                                                              CV06-5962 (JS)(WDW)

    -against-

JAMES LUCA, et al.,
                              Defendant(s).
-------------------------------------------------------------------X
**WALL, Magistrate Judge:**

      Before the court is the imposition of sanctions in connection with a motion made by the plaintiff, seeking entry of default judgment or a finding of contempt on the part of defendants Eric Forte, David Jacobson, Candice Giaccone and Shaw Mortgage Group (the "Shaw defendants"), along with an order compelling the production of certain documents and the imposition of sanctions. DE[62]. The court had earlier entered orders compelling the Shaw defendants to comply, and familiarity with those orders is assumed. *See* DE[18] & [59]. For the reasons set forth *infra*, the following sanctions are imposed:

      The Shaw defendants must produce, by **December 22, 2008,** all responsive documents in their control as well as in their possession, and, as to documents that they claim they cannot produce, to provide written, sworn statements as to whether the documents in question were ever in their possession or control and why they are not able to produce them. Based on their responses, the court will, if necessary, entertain a motion by the plaintiff for a finding of spoliation as to specific documents or will reconsider the imposition of dispositive sanctions. Further, the Shaw defendants are ordered to pay the reasonable attorneys' fees for all of the motions that the plaintiff has been forced to make regarding the issues addressed in this order. The plaintiff shall submit its application for reasonable fees no later than **December 22, 2008.**

Opposition must be filed by **January 5, 2009**, with a reply due by **January 16, 2009.**

Further, all parties will appear before the undersigned, so that an expedited discovery schedule can be set, on **December 4, 2008 at 2:00 p.m.** Any request to adjourn that conference must be filed as a letter motion and must include alternative dates during the weeks of December 1 or December 15 that are acceptable to all parties. Counsel shall confirm the date of the conference with one another upon receipt of this order.

## BACKGROUND

A brief summary of the claims in this action will put the following discussion in context. The plaintiff, Fairfield Financial Mortgage Group ("Fairfield"), describes itself as "a financial institution in the business of home lending," that used closing counsel and title abstract companies in the course of business. DE[56] at 1; see also Amended Complaint, DE[20]. Fairfield alleges that in or about April 2005, defendants James Luca, David Jacobson, and Eric Forte became employees of Fairfield's Uniondale, New York branch office, Luca as manager and Jacobson and Forte as assistant managers. DE[56] at 1. Defendant Candice Giaccone, who later married Luca, was hired sometime later to work in the same office. Without Fairfield's knowledge, Luca and defendant Michael Moberg, one of the closing attorneys used by Fairfield, set up a title abstract company, Medallion Abstract, LLC, nominally owned by Luca's uncle, defendant Carlo Dellapina. However, Fairfield alleges, Medallion was actually owned and/or controlled by Luca and Moberg. Id. Fairfield further alleges that Luca, Giaccone, Jacobson and Forte "ensured that the Uniondale Branch's title work was referred to Medallion," enabling Luca to "receive secret profit from Medallion."

Further, Fairfield claims, although Luca, Jacobson, Forte and Giaccone had an obligation

to operate the Uniondale branch solely for the benefit of their employer, they diverted mortgage applications accepted on behalf of Fairfield to Fairfield competitor, defendant Shaw Mortgage Group, Inc. *Id.* at 2. While employed by Fairfield, Luca, Jacobson and Forte were allegedly involved in the formation of a branch of Shaw that first operated at Fairfield's Uniondale branch address and later moved to a location in East Meadow, New York. In forming the Shaw branch, the defendants allegedly used Fairfield's confidential information, including customer lists, as well as other property and resources. *Id.*

Fairfield started this action against Luca on November 3, 2006, and, in May 2007, subpoenaed then non-parties Shaw, Forte, Jacobson and Giaccone for depositions and documents. In October 2007, Fairfield amended its complaint to add them as defendants, including causes of action against the individuals for breach of fiduciary duty, and against Shaw for unfair competition. The procedural history of this action in relation to the subpoenas has been set forth in earlier orders and will not be fully repeated in this Report, except to the extent necessary. The court must, however, address the latest procedural development. On 9/30/08, District Judge Seybert issued a Memorandum and Order granting in part and denying in part a motion to dismiss filed by the Shaw defendants. The motion was denied in all regards except as to Fairfield's unfair competition claim against Shaw, which was dismissed. Fairfield was given thirty days from the date of the order to file an amended claim. *See* DE[82]. Fairfield filed its amended complaint on 10/21/08 (DE[83]), and the various defendants answered. *See* DE[87], [88] & [89].

After the plaintiff's motion for contempt was filed, the undersigned scheduled a hearing and directed the plaintiff to clarify the sanctions that it sought, and to provide legal support for

3

those sanctions. Both plaintiff and defendants filed memoranda of law in response to the court's order. *See* DE[68] & [71]. A motion hearing was held on 7/17/08[1], at which time the court granted the motion to compel and deferred ruling on the motion for contempt and sanctions. The Shaw defendants were directed to comply with all outstanding discovery by 7/23/08 and the plaintiff was directed to advise the court no later than 7/30/08 of any documents not produced.

On 7/22/08, defense counsel filed a letter with the court, stating that the definition of the word "file" and how it related to the documents that were ordered to be produced was unclear. The defendants sought the court's "assistance" and also asked for an extension of time to comply and/or a stay. DE [73]. The plaintiff responded by stating, in essence, that any opposition that it had to the content of the letter had already been expressed in earlier letters. DE[74]. A telephone conference regarding the defendants' requests was held on 7/25/08, during which the motion for a stay was denied, but the defendants were given until 7/28/08 to produce the required documents. DE[75].

On 7/29/08, the plaintiff filed a letter motion reporting the Shaw defendants' alleged failure to comply with the discovery orders and requesting a hearing on sanctions. DE[76]. It listed the specific "defaults" for each of the Shaw defendants. The defendants opposed the motion, arguing, for the first time, that the plaintiff "seeks documents that do not belong to defendants and that are beyond acceptable disclosure parameters." DE[77] at 1. An evidentiary hearing was scheduled for 8/20/08 and took place on that date.

---

[1] The docket entries made on 7/18/08 erroneously state that the hearing was held on that date. It was not. It was held on 7/17/08.

**DISCUSSION**

In its memorandum of law in support of the motion, the plaintiff explained that it sought (1) a report and recommendation that a default judgment be entered against each of the Shaw defendants pursuant to Rule 37 (b)(2)(A)(vi), or a recommendation that each of them be held in contempt pursuant to Rule 37 (b)(2)(A)(vii), and (2) an order requiring the Shaw defendants to pay Fairfield's costs, including reasonable attorneys's fees associated with Fairfield's efforts to gain the compliance of the Shaw defendants. DE[68] at 1. Fairfield also seeks an order directing the Shaw defendants, once again, to produce the discovery it has withheld. *Id.*

The court will examine the specific failures of discovery that the plaintiff alleges against each of the defendants, and the defendants' responses to those allegations.

**Shaw Mortgage Group:**

As to Shaw Mortgage, the plaintiff reports that, in a Deposition Subpoena and Subpoena Duces Tecum[2] dated May 14, 2007, it demanded production of 75 loan files, and that Shaw failed to provide any loan files, instead delivering 65 applications that were missing various parts. Shaw also produced unsigned estimates for 14 borrowers, two pre-application disclosures and fee agreements, and one Uniform Underwriting and Transmittal Summary. DE[76] at 1. Fairfield specifies numerous grounds on which Shaw is in default as to the 75 files, including an assertion that some of the documents appeared to be redacted. Further, Fairfield reports, Shaw failed to produce management agreements, lists of employees, a lease agreement, rental records, 1099 or W-2 forms issued from Shaw to James Luca, and records of payments to Luca and other

---

[2]*See* DE[17], Ex. E. Apparently, the Shaw defendants did appear for depositions, but did not produce the demanded documents.

employees. *Id.* at 1-2.

Shaw objects, reiterating the assertion that the definition of the word "file" is in question, and reporting that it produced every Uniform Residential Application in its possession. DE[77] at 1. Shaw also reported that it had (on an unspecified date) asked Fairfield for a "more definite demand for documents" but that the plaintiff had, in a responsive letter dated 7/31/08, "**for the first time**" listed new documents that had not been produced. DE[77] at 2 (emphasis in original), Ex. B. Shaw sums up by stating that it has complied with the court's orders because it has produced "everything in its possession to plaintiff," that the "balance of the files, comprised of appraisals, credit reports and disclosures have no bearing on the causes of action alleged, nor will they lead to discovery of other evidence that is relevant" to the plaintiff's claims, and that other documents "*now*" demanded by the plaintiff, such as HUD-1 statements, etc., are "**lender's documents** that were delivered to plaintiff by defendant Moberg as its bank attorney **as a condition to plaintiff's funding of the loans**." DE [77] at 2 (emphasis in original). Thus, Shaw argues, it does not have those documents in its files, is not otherwise in possession of them and cannot produce them. *Id.*

The flaw in Shaw's argument is that it comes far too late. When the plaintiff issued document subpoenas to the then non-party Shaw defendants in May 2007, they chose to ignore them. When the plaintiff moved this court for orders compelling compliance with the subpoenas in 9/2007, they chose to ignore the motions. When the court granted the unopposed motions and issued an order compelling compliance on 10/10/07, they chose to ignore it. When the plaintiff moved for sanctions on 4/23/08 (DE[56]) based on the defendants' failure to comply, the court again compelled production, imposed monetary sanctions and threatened more severe sanctions.

DE[59]. The defendants then moved for reconsideration on grounds that the court found to be "absurd." DE[61] at 1. Only after the motion for reconsideration was denied on 6/3/08, and they were ordered to produce the documents by 6/5/08, did the defendants make any effort to comply, an effort that resulted in the current motion for sanctions.

At no time prior to 6/5/08 did the defendants file any written objections to the document demands, and Shaw's objections of that date stated, in essence, that Shaw was not in possession of most of the demanded documents. *See* DE[62], Ex. G. The federal rule, of course, is that parties must produce items in their "possession, custody, and control," not just those in their immediate possession. *See* Fed. R. Civ. P 34 (a)(1). Documents are under a party's control when it has the right, authority or practical ability to obtain them from a non-party. *See Bank of Meridien v. Meridien BIAO Bank Tanzania, Ltd,* 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997); *DeVos v. Lee,* 2008 U.S. Dist. LEXIS 58817, *3-4 (E.D.N.Y. July 29, 2008) (internal citations omitted.) In their written opposition to the motion, the defendants make no argument that they lack control over all of the unproduced documents, merely stating that many of the unproduced documents are not in their possession and/or are in the possession of others. *See* DE[77]. This argument not only lacks credibility as to many of the documents, for example, the management agreement and 1099 or W-2 forms, but is also not supported by the applicable law. The Shaw defendants also, as noted earlier, claim that the plaintiff is now broadening its definition of the outstanding documents, and is demanding "irrelevant" documents. The time to raise these arguments is long past.

The explanation for non-production asserted at the evidentiary hearing was somewhat different from the one set forth in written submissions, and focused on the missing parts of the

7

files. At the hearing, the defendants put on one witness - Robert Hilsby, the President of Shaw Mortgage Group. Mr. Hilsby testified, *inter alia*, that in October 2007, when the court's first order to compel was issued, Shaw had been evicted from its offices and the sheriff had removed everything, and that Hilsby had been in Europe on his honeymoon at the time. DE[81] Tr.6:22-7:22. Hilsby stated that the 75 files at issue in the document production were among the removed items and some of them had been lost, so they gave the plaintiff "all the information that we could generate via the computer." Tr. 9:9-10. He stated further that he had produced everything that he "had," but had not asked any of his employees to start making copies of files before they were removed, despite his awareness of the 10/10/07 order compelling production, because "we don't share." Tr. 11:12-12:3. The court finds nothing in Mr. Hilsby's testimony to excuse the non-production. He did not address the specifics of non-production by the individual defendants, to which the court now turns.

**Eric Forte**:

Eric Forte was employed as an assistant manager of the plaintiff's Uniondale branch. The plaintiff asserts that he has failed to produce any records of income received for the years 2005 and 2007, and any records of payments to employees of various entities listed in the subpoena. DE[76] at 2. He asserts that he does not have any records of payments made to employees of Shaw Mortgage, and that demands for income information for 2005 and 2007 are irrelevant, inasmuch as he is accused, in the complaint, of diverting funds only in 2006. As noted earlier, merely lacking possession of documents is not an adequate objection and he does not assert that he has no control over the documents. Further, whatever the merits of these arguments might be, they are, like the arguments made by Shaw, too late. He has failed, without justification, to

8

comply with the discovery orders of this court.

**<u>Candice Giaccone:</u>**

Giaccone was an employee at the plaintiff's Uniondale branch. Fairfield asserts that she did not produce any W-2s or 1099s for the years 2005 and 2007, in addition to documents relating to the transfer of property located at 2550 Hempstead Turnpike, with the sole exception of the deed for the property. DE[76] at 3. She also allegedly failed to produce any records relating to the ownership of BLM Consulting, and the lease with BLM for rental of Shaw's East Meadow office. *Id.*

Gicaccone argues that she produced the deed for the transfer of property and that the plaintiff did not specify what documents "related to the transfer" it sought. She also says that she produced some rent records and that no written lease agreement can be located. She, like Forte, also argues that income records for 2005 and 2007 are irrelevant and that she has no other documents "in her possession." DE[77] at 3. Unlike the other defendants, Ms. Giaccone did file a written response to the document demands, albeit not until July 15, 2008. DE[77], Ex. D.

**<u>David Jacobson:</u>**

Fairfield asserts that David Jacobson, who was, like Forte, a manager at Fairfield's Uniondale branch, failed to produce income records for the years 2005 and 2007, a journal he removed from the plaintiff's Uniondale office, and records of payments to employees of various entities. DE[76] at 3. He argues that he does not have the journal, nor does he have records of payments to Shaw employees, and that income information for 2005 and 2007 is irrelevant. Although defense counsel refers to Jacobson's "prior response to discovery demands," there is no citation to where in the record that response might be found. DE[76] at 3.

The court next turns to the sanctions sought by Fairfield.

**<u>Order Compelling Production:</u>**

The plaintiff seeks yet another order compelling the Shaw defendants' full compliance with the earlier orders, and the court will once again order them to comply, specifically requiring the defendants to produce all documents in their control as well as in their possession, and, as to documents that they claim they cannot produce, to provide a written, sworn statement as to whether the documents in question were ever in their possession or control and why they are not able to produce them now. This order is reiterated *infra*.

**<u>Entry of Default under Rule 37(b)(2)(A)(vi):</u>**

Rule 37 (b)(2)(A)(vi) provides that if a party fails to obey an order to provide or permit discovery, the court may issue further orders, including the rendering of a default judgment against the disobedient party. "The purpose of Rule 37 sanctions is to (1) 'ensure that a party will not benefit from its own failure to comply,' (2) serve as a 'specific deterrent[] . . ., and obtain compliance with a particular order issued,' and (3) 'serve as a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.'" *Ocello v. City of New York,* 2008 WL 789857, at *5 (E.D.N.Y. Mar. 21, 2008) (citing *Update Art, Inc. v. Modlin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir. 1988) (additional citations omitted)). District courts have wide discretion in imposing Rule 37 sanctions, so long as they are "'just'" and "'relate to the particular claim to which the discovery order was addressed.'" *Id.* (citing *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1365-66 (2d Cir. 1991) (internal citations omitted)). The most severe sanctions, such as those sought

10

here, should not be imposed unless the failure to comply with a discovery order is due to willfulness, bad faith, fault or gross negligence, rather than inability to comply or mere oversight. *Id.* (citations omitted).

In choosing an appropriate sanction, courts consider such factors as "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party had been warned of the consequences of his noncompliance." *Id.* at 6 (citing *Richardson v. New York City Health and Hospitals Corp.,* 2007 WL 2597639, at *6 (S.D.N.Y. 2007) (additional citations omitted)). No one factor is dispositive, and "'sanctions must be weighed in light of the full record of the case.'" *Id.* (citing *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1068 (2d Cir. 1979)). Each factor will be examined.

<u>Willfullness:</u> Non-compliance with discovery orders will be deemed willful when the orders "'have been clear, when the party has understood them and when the party's non-compliance is not due to factors beyond the party's control.'" *Id.* at 6 (citing *Burgie v. Euro Brokers, Inc.,* 2006 WL 845400, at *12 (E.D.N.Y. 2006) (internal citations omitted)). Fairfield argues that all of those factors are present here, and the court agrees. *See* DE[68] at 3-4. In opposition, the Shaw defendants argue first, and without merit, that they have fully complied with the discovery orders. *See* DE[71] at 4-5. They have not done so, as is amply illustrated *supra*. The defendants also argue that non-compliance was not willful because they were non-parties when the subpoenas issued, and were not represented by counsel when Fairfield made its first, unopposed, motion to

11

compel, and the court entered its 10/10/07 order. *Id.* at 4. How the fact that they were non-parties addresses the issue of whether they willfully ignored the subpoenas, the motion, and, most relevant to the instant sanctions, the 10/10/07 order of this court, is unclear. Further, the defendants do not address the willfulness of their failure to comply with the 5/20/08 order of the court, other than to say that it was "based" on the 10/10/07 order, which the defendants apparently believe did not apply to them. The court addressed the shifting status of the Shaw defendants in the 5/20 order, holding that:

> At the time the subpoena and the subsequent order directing compliance were issued, the defendants were non-parties, subject to sanctions under Rule 45. Now, they are parties, subject to sanctions under Rule 37, and the court will sanction them under that Rule, for failure to comply with this court's 10/10 order. Under Rule 45, the defendants could be held in contempt for their "[f]ailure . . . without adequate excuse to obey a subpoena served upon [them]." Fed. R. Civ. P. 45 (e)[3]. Under Rule 37, the court can impose a wider variety of sanctions, including the payment of reasonable expenses. *See* Fed. R. Civ. P. 37(b)(2)(C). Here, although the defendants were not subject to Rule 37 sanctions when the order issued, they are now, and have sought protection for their failure to comply with the 10/10 order in an order issued after they became parties. They can't have it both ways. Moreover, the imposition of sanctions under Rule 37 can be for failure to comply with an order not issued under that Rule. *See Daval Steel Products v. M/V Fakredine,* 951 F. 2d 1357, 1363 (2d Cir. 1991).
> Thus, under Rule 37, defendants Shaw, Giaccone, Jacobson and Forte must each pay $300 in reasonable expenses to the plaintiff and must fully comply with the earlier order, both acts to be completed within ten days of the date of entry of this order. Failure to comply with this order will put defendants Shaw, Giaccone, Jacobson and Forte at risk of additional, more serious sanctions. (DE[59] at 2-3.)

---

[3]Under 28 U.S.C. §636(e)(6)(B)(iii), a magistrate judge may certify to a district judge that an act constitutes civil contempt, and the district judge, after a hearing, determines the appropriate punishment. *See Hand Picked Selections, Inc. v. Handpicked Wines Int'l.,* 2006 U.S. Dist. LEXIS 42077, *7 (E.D.N.Y. June 22, 2006).

12

The court finds the defendants' arguments against a finding of willfulness to be without merit.

Duration of Noncompliance:

The period of the defendants' noncompliance lasted generally from May 2007, when the original non-party subpoena was issued, to July 2008, when the motion now before the court was filed. This duration weighs in favor of sanctions.

Prejudice to Other Parties:

The defendants' non-compliance has without doubt contributed to an overall delay in this action. However, the record also reflects that the defendants' motion to dismiss was only recently decided, and an amended complaint and answers to that complaint filed. This too resulted in a slower than usual course of discovery, with an order entered on 1/11/08 staying all discovery deadlines pending a determination of the Rule 12 motion. Thus, the court cannot find that the delay, and any delay-related prejudice to the plaintiff and the other defendants, was due entirely to the Shaw defendants' behavior, and the court does not find that prejudice to the other parties weighs in favor of the sanctions sought.

Warnings:

The record clearly establishes that the Shaw defendants were repeatedly warned that failure to comply with the court's orders would result in sanctions, including the possibility that a default judgment would enter. Accordingly, this factor weighs in favor of the sanctions sought.

Efficacy of Lesser Sanctions:

A finding of willfulness and other factors in favor of sanctions does not necessarily lead

to the imposition of case-dispositive relief. As noted earlier, sanctions pursuant to Rule 37 must be "just" and "must relate to the particular claim to which the discovery order was addressed." *Daval Steel Prods.,* 951 F.2d at 1366. Here, the orders were addressed to documentary discovery that the Shaw defendants failed to produce. The court could order preclusion of testimony regarding that evidence, or direct a spoliation charge be given to the jury, or impose monetary sanctions, or some combination of the above, and indeed, I find that a combination of these lesser sanctions is the most appropriate course at this time. So that this action can move along as expeditiously as possible, to provide the plaintiff with a better basis for proving its potential damages, and to avoid any prejudice that might befall the non-Shaw defendants if a default were entered against the Shaw defendants, the court imposes the following sanctions.

The Shaw defendants must produce, by **December 22, 2008,** all responsive documents in their control as well as in their possession, and, as to documents that they claim they cannot produce, to provide written, sworn statements as to whether the documents in question were ever in their possession or control and why they are not able to produce them. Based on their responses, the court will, if necessary, entertain a motion by the plaintiff for a finding of spoliation as to specific documents or will reconsider the imposition of dispositive sanctions. Further, the Shaw defendants are ordered to pay the reasonable attorneys' fees for all of the motions that the plaintiff has been forced to make regarding the issues addressed in this order. The plaintiff shall submit its application for reasonable fees no later than **December 22, 2008.** Opposition must be filed by **January 5, 2009**, with a reply due by **January 16, 2009.**

Further, all parties will appear before the undersigned, so that an expedited discovery

schedule can be set, on **December 4, 2008 at 2:00 p.m.** Any request to adjourn that conference must be filed as a letter motion and must include alternative dates during the weeks of December 1 or December 15 that are acceptable to all parties. Counsel shall confirm the date of the conference with one another upon receipt of this order.

Because the court has imposed the above sanctions, it does not now consider the plaintiff's alternative request for a finding of contempt pursuant to Rule 37 (b)(2)(A)(vii).

Dated: Central Islip, New York  **SO ORDERED:**
November 19, 2008

    /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge