UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FAIRFIELD FINANCIAL MORTGAGE,
                          Plaintiff(s),                             **REPORT AND**
                                                                     **RECOMMENDATION**
              -against-                                    CV 06-5962 (JS) (WDW)

JAMES R. LUCA, ERIC FORTE, DAVID JACOBSON,
CANDICE GIACCONE, MICHAEL J. MOBERG,
MOBERG & ASSOCIATES, PLLC, SHAW MORTGAGE
GROUP, INC., SHAW ELITE, LLC, SIMPLY ELITE, LLC,
CARLO DELLAPINA, MEDALLION ABSTRACT, LLC
and BLM CONSULTING, LLC,
                                  Defendant(s).
----------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

      Before the court on referral from District Judge Seybert is the motion by defendants David Jacobson and Eric Forte to vacate the defaults entered against them. DE[230].[1] The motion is opposed by the plaintiff. A hearing was held and post-hearing submissions considered. Based on all of the papers submitted and the testimony and argument at the hearing, for the reasons set forth herein, I recommend that the motion be DENIED both as time-barred and on the merits.

## BACKGROUND

      This action was filed in November 2006, with the plaintiff, Fairfield Financial Mortgage Group, alleging breach of contract and various business-related tort claims against James Luca, the former manager of Fairfield's office in Uniondale, New York. Jacobson and Forte worked as assistant managers in the Uniondale office, and were not named as defendants in the original complaint. They were added as defendants in the Amended Complaint, filed on 10/19/07, which

---

[1] Further references to docket entries in ECF will be noted as a number in brackets, without the "DE" designation.

claims that they breached their fiduciary duty to Fairfield by assisting Luca in the diversion of mortgage brokerage business to defendant Shaw Mortgage Group ("Shaw"), assisting Luca in setting up a branch of Shaw in competition with Fairfield, processing loans on behalf of Shaw at the Uniondale Office, providing financial incentives to Fairfield employees to encourage them to process loans on behalf of Shaw, referring or causing the referral of Fairfield's Uniondale office's title business to defendant Medallion Abstract, in which Luca and other Fairfield fiduciaries allegedly had an interest, and recruiting Fairfield employees to work at the Shaw branch. *See* Pl. Mem in Opp. at 2.

The plaintiff first served discovery subpoenas on Forte and Jacobson, along with Candice Giaccone and Shaw Mortgage Group, when they were non-parties. They appeared for depositions, but failed to comply with the post-deposition document demands, and the plaintiff moved to compel compliance on 9/6/07. [14]. That motion was granted on 10/10/07, following oral argument. [18]. My order, *inter alia*, directed Forte and Jacobson to comply with the subpoenas with the exception of the demand for the production of tax returns, but other income-related documents were to be produced.

As noted *supra*, the Amended Complaint was filed on 10/19/07, adding Forte and Jacobson and a number of other entities and individuals, including Giaccone and Shaw, as parties. A motion to dismiss by some of the new defendants slowed down the discovery process, and, on 4/23/08, the plaintiff moved for sanctions against Forte, Jacobson, Shaw and defendant Candace Giaccone. [56]. That motion was granted on 5/20/08, and the defendants were ordered to each pay $300 in sanctions and to fully comply with the order of 10/10/07 within ten days. They were warned that failure to comply would put them at risk of additional, more serious

2

sanctions. [59]. They moved for reconsideration, which was denied on 6/3/08. [60] & [61].

On 6/12/08, the plaintiff again moved for sanctions, specifically seeking an order of contempt and a further order compelling production of the outstanding discovery. [62]. A hearing was held on 7/17/08, and Forte, Jacobson, Shaw and Giaccone were given until 7/23/08 to complete production. Both Forte and Jacobson were present at that hearing. The plaintiff was directed to inform the court by 7/30/08 of any failures to produce, and the issue of sanctions was deferred. [72]. On 7/29/08, the plaintiff requested another hearing, listing numerous failures by the defendants in the ordered production. [76]. The court informed the parties that it would address the earlier sanctions issues and the issues raised in the 7/29 letter at a hearing on 8/20/08. The hearing was held and decision reserved. [80]. On 9/30/08, District Judge Seybert decided the motion to dismiss, granting it in part and denying it in part. [82]. Judge Seybert's order allowed the plaintiff to file a Second Amended Complaint, which it did on 10/21/08.

On 11/19/08, I issued an order granting in part and denying in part the plaintiff's motions for contempt and for sanctions. [90]. The summary of the order set forth in the docket stated that "[t]he Shaw defendants[2] must produce, by December 22, 2008, all responsive documents in their control as well as in their possession, and, as to documents that they claim they cannot produce, to provide written, sworn statements as to whether the documents in question were ever in their possession or control and why they are not able to produce them. Based on their responses, the court will, if necessary, entertain a motion by the plaintiff for a finding of spoliation as to specific documents or will reconsider the imposition of dispositive sanctions. Further, the Shaw defendants are ordered to pay the reasonable attorneys fees for all of the motions that the plaintiff

---

[2]"The Shaw defendants" included Forte, Jacobson, Giaccone and Shaw.

has been forced to make regarding the issues addressed in this order. The plaintiff shall submit its application for reasonable fees no later than December 22, 2008. Opposition must be filed by January 5, 2009, with a reply due by January 16, 2009. Further, all parties will appear before the undersigned, so that an expedited discovery schedule can be set, on December 4, 2008 at 2:00 p.m." Although Forte and Jacobson's attorney, Kenneth Pelsinger, subsequently filed an affidavit addressing the production of documents, none of the Shaw defendants filed the individual sworn statements that the order required. *See* [100].

At the conference on 12/4/08, new discovery deadlines were set. [94]. On 12/22/08, Fairfield filed its motion for attorneys fees ([96]), and on 1/29/09, it filed a new motion for sanctions, outlining further failures to comply with my orders by Forte, Jacobson, Shaw and Giaccone, including. [98]. Among the documents at issue in the ongoing discovery dispute was a journal maintained by Jacobson that contained, *inter alia*, records of loan closings[3]. At his non-party deposition on May 31, 2007, Jacobson testified that he had a journal, but that it was personal in nature, containing non-business related information, and that he might have lost it but would look for it. He expressly stated that it contained no entries with respect to the business, a statement that has since been shown to be untrue. Jacobson Dep., [235], Haskel Decl. in Opp., Ex. D, 84:17-85:18. As late as 2/24/09, Kenneth Pelsinger, counsel for the Shaw defendants, stated in a sworn affidavit that "Jacobson does not have the 'journal' plaintiff refers to. . ." [100], ¶8. Now, Forte and Jacobson state that they would have "gladly" produced the journal had Pelsinger told them it was necessary to do so. Joint Decl., ¶14. Of course, they had already been ordered by the court to produce all outstanding documents, including the journal, and they were

---

[3]The journal was very belatedly produced, after the defendants changed counsel.

present at the hearing on 7/18/08 during which the court warned them that sanctions would be imposed if they failed to produce all the demanded documents, including the journal. *See* Tr. of 7/18/08 Hg., pp. 7, 12-13. At that same hearing, Pelsinger stated that they had "complied 100%" with the ordered production.

The motions for attorneys fees and sanctions were unopposed by the defendants, and a hearing was scheduled for 2/23/09. Discovery was stayed pending a determination of the sanctions motion. The hearing was held, and, the next day, Pelsinger filed an affidavit in response to my 11/19/08 order that the defendants' submit written statements that they had fully complied with all discovery orders. In his affidavit, Pelsinger stated that "Jacobson does not have the 'journal' plaintiff refers to. . ." [100], ¶8. He also argued, despite earlier rulings to the contrary, that Jacobson and Forte should not be required to disclose information about their earnings in 2007, because such income is irrelevant to the claims against them. [100], ¶¶ 9& 11.

I subsequently issued an order awarding Fairfield $13,044.75 in attorneys fees. [101]. On 3/5/09, I also issued a Report and Recommendation to Judge Seybert, recommending that the answers filed by Forte, Jacobson and Shaw be stricken and default judgments entered against them as a sanction for their repeated, willful failures to comply with my orders. [102]. Giaccone had, I found, sufficiently complied with the demands to avoid that result. The defendants objected to the R&R ((103-105]), but it was adopted by Judge Seybert on 9/30/09. [148]. At Judge Seybert's direction, the plaintiff filed a formal motion for default on 10/16/09 [149], and the Clerk of the Court entered a Certificate noting default on 10/19/09. [167]. On 10/30/09, Judge Seybert entered a default judgment against the Shaw defendants, including Forte and Jacobson, and referred the determination of damages to me. [174]. On 11/2/09, Forte and

Jacobson filed an appeal with the Second Circuit, but that appeal was later dismissed. *See* [179]. Dates were set for an inquest before me, but I was unable to conduct the inquest, and the hearing was referred to Magistrate Judge Tomlinson. [215].

A three day inquest was held on 5/26/10, 5/27/10, and 5/28/10, and Judge Tomlinson issued a Report and Recommendation on 8/23/10. [222]. The R&R reiterated the recommendation that a default judgment be entered, finding that the defendants' repeated failures to comply with orders of the court were willful and not a good faith mistake, excusable neglect, or technical default. A determination on the amount of damages was deferred, however, because several non-defaulting defendants remain in the action. Judge Seybert has not yet ruled on that R&R. On 10/29/10, Forte and Jacobson moved to vacate the default judgment, the motion now before the court. [230]. That motion, as noted earlier, was referred to me. [234]. Shaw has not moved to vacate the default against it.

The motion to vacate is based on allegations by Forte and Jacobson against their former counsel, Kenneth Pelsinger. Pelsinger represented Forte and Jacobson from at least 11/15/07, when they filed an Answer to the Amended Complaint, until 11/23/09, when Jonathan Stein was substituted in as their counsel. Pelsinger continues to represent Candace Giaccone and possibly Shaw[4] in this action. In support of the motion to vacate the default judgment, Forte and Jacobson submitted a "Joint Declaration," in which they state, *inter alia,* that defendant Luca, their former employer, had "obtained" Pelsinger to represent them, and that Pelsinger and Luca had a "prior business relationship." [230], ¶9. They further state that they were unaware of having been

---

[4]The docket lists Shaw Mortgage Group both as appearing pro se (which, as a corporation, it cannot do), and as being represented by Pelsinger.

ordered to produce certain documents, including the Journal, and that Pelsinger never advised them to produce such documents. They only learned of it, they claim, when he advised them in Fall 2009 that their answers would be stricken and default judgments entered against them. *Id.*, ¶10. During the protracted motion practice involving their discovery obligations, they claim that Pelsinger had told them that they "did not have to produce anything, as [they] had already given the Plaintiff everything it was entitled to." *Id.*, ¶11. In short, they blame all of their failures to comply with the court's orders on Pelsinger and his failure to adequately advise them of their responsibilities. Pelsinger states, in his Affirmation filed on 12/20/10, that he requested them to provide the journal and income records and that they did not do so, informing him that "they were not in possession thereof." He further states that he "responded to any discovery demands and orders regarding the production of the subject journal and tax returns accordingly." [247], ¶5. This is inconsistent, of course, with Pelsinger's statement at the 7/18/08 hearing that his clients has complied "100%" with their discovery obligations. In their motion to vacate, the defendants also seek an order compelling Pelsinger to turn over the contents of any file accumulated during his representation of "any party in this litigation, whether the moving Defendants or others, and to certify the contents thereof to be complete and unaltered." [230], Stein Decl.

Because Forte and Jacobson have based their request to vacate primarily on the alleged actions of Pelsinger, on 12/1/10, I ordered Pelsinger to submit a sworn response to the motion and ordered Forte and Jacobson to submit sworn, written waivers of any attorney client privilege between them and Pelsinger. Forte and Jacobson filed the waivers on 12/1/10 and Pelsinger submitted an Affirmation on 12/20/10. [242], [243], & [247]. A hearing was held on 3/18/11 and

3/24/11 and the parties were given leave to submit post-hearing briefs. They did so on 4/29/11. [260] & [261].

**DISCUSSION**

The defendants have moved pursuant to Rule 55(c) and Rule 60. Rule 55(c) provides for setting aside an entry of default for good cause, and notes that the court can set aside a default judgment under Rule 60(b). Here, where there has been not only an entry of default but entry of a default judgment, Rule 60(b) is the applicable Rule. Rule 60(b) provides six separate grounds for relief: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . . misrepresentation or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied . . .; (6) any other reason that justifies relief." I turn first to the issue of the timeliness of the motion.

**Timing for Rule 60 Motions:**

Judge Seybert adopted the R&R recommending that the answers be stricken and a default judgment entered on 9/30/09, and formally entered a default judgment on 10/30/09. I will thus use the latter date as the relevant one for entry of the judgment. The instant motion to vacate the default was made on 10/29/10.

It is unclear here what section of Rule 60(b) Forte and Jacobson are moving under, a factor relevant to the determination of whether the motion is time-barred, but the only possible provisions would appear to be 1 or 6. The Rule provides that any motion under Rule 60(b) "must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Rule 60(c). The motion here was made one day short of a year, and, if the movants are relying on section 1, I will assume that they

have met the one year requirement. But that does not mean that they have automatically met the "reasonable time" requirement that applies to all of the sections, including section 1. The court can find a motion under Rule 60(b)(1) to have been brought in an unreasonable amount of time even it was brought within the one year period. *See Amoco Overseas Oil v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648, 656 (2d Cir. 1979) "[A]lthough the fact that a motion was made barely within the one-year time limit gives the court the power to entertain it, as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable.'" *Id.; see also Dow Chemical Pacific. Ltd. v. Rascator Maritime, S.A.*, 782 F.2d 329, 336 (finding a seven month delay from knowledge of the default to filing of the motion to be unreasonable under "reasonable time" requirement as applied to Rule 55(c)). Here, as noted, the defendants waited until the last possible day to make the motion within the one year limit, and they have offered no explanation for that delay, either in their papers or at the hearing, other than to say that they requested documents relating to this case from Pelsinger and did not timely receive them. Mr. Stein appeared for Forte and Jacobson in November 2009, after the default judgment against them had been entered, and waited until October 2010 to make the motion, despite the fact that he was fully aware of the default judgment and had noted in a submission to the court in April 2010 that they would "be shortly moving to vacate the default. . ." [186]. Further, Stein participated in the default damages inquest in May 2010, and failed to enter any opposition to Judge Tomlinson's R&R, which reiterated the willfulness of Forte and Jacobson's actions. Under these circumstances, the defendants have not met their burden of showing that the extended delay was reasonable even if it was made on the last possible day to satisfy the one year requirement of

Rule 60(b)(1).

Nor was it reasonable under Rule 60(b)(6). Considering the motion under Rule 60(b)(6), the court must look to the "particular circumstance of each case" and "balance the interest in finality with the reasons for delay" to determine whether it was brought in a reasonable time. *Grace v. Bank Leumi Trust Co. of N.Y.,* 443 F.3d 180, 191, n.8 (2d Cir. 2006). A "Rule 60(b)(6) motion requires 'extraordinary circumstances," which 'typically do not exist where the applicant fails to move for relief promptly . . ." *Id.* (citations omitted). While some instances of attorney malfeasance might rise to the level of extraordinary circumstances for Rule 60(b)(6) purposes, that is not the case here, where the record is full of proof that Forte and Jacobson were or should have been personally aware of the situation involving the production of the journal and income-related documents and the possible consequences of their failure to produce them. The plaintiff has provided a comprehensive and persuasive narrative of the many ways in which Forte and Jacobson must be held personally accountable for their failure to produce the demanded documents, even if Pelsinger is also guilty of malfeasance in this matter. *See* [236] & [237], Pl. Mem in Opp.

As the plaintiff points out, Jacobson lied about the journal from the outset, by testifying at his non-party deposition that it contained no business information at all, when it in fact contains details of loan transactions highly relevant to the claims at issue in this lawsuit. Jacobson also testified at that deposition that he would produce the journal if he could find it, but that it was lost. However, the plaintiff reports, there were entries in the journal for transactions occurring the very day Jacobson testified that it was lost. [214-1], Journal at pp. 19-22.

Further, they were present in court on July 17, 2008, when counsel for Fairfield argued

that they should be sanctioned for their failure to turn over the journal and income records. *See* 7/17/08 Tr. at 3-7. That same day, they heard their counsel tell the court that the journal had not been delivered in compliance with the 5/20/08 order because is was not available. *Id.* at 6. Based on Forte and Jacobson's current claims, they knew at that time that the journal was available, yet sat and let their counsel argue that it was not. They state in their Joint Declaration that if "Mr. Pelsinger had, at any time, requested the tax returns and Journal from us, we would gladly have provided them to him." Jt. Decl., ¶14. They thus knew, when Pelsinger told the court that all documents had been delivered, that it simply was not true, because they now claim that the documents were at that time in their possession. Yet they did nothing, purportedly because they had been told by Pelsinger that they had turned over everything to which Fairfield was entitled. Even if Pelsinger did tell them that, however, they have engaged in willful conduct supporting the entry of default and defeating any argument that Pelsinger's behavior rises to the level of "extraordinary circumstances" for Rule 60 purposes. Any testimony at the hearing on this motion that they were unaware that the documents had to be produced was simply not credible. These circumstances not only lead to the finding that the motion was not timely made under Rule 60(b)(6), they also support a finding that the motion, even if considered timely, must be denied on the merits.

**Motion to Vacate on the Merits:**

In deciding a motion to vacate a default judgment, the court focuses on three principal factors: (1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense; and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice. *S.E.C. v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998). Where an

order is based on a willful default, a motion under either Rule 55 or Rule 60 can be denied on that basis alone. *See Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 507 (2d Cir. 1991)( default should not be set aside when it is found to be willful)(citations omitted). Willfulness is "conduct that is more than merely negligent or careless." *McNulty,* 137 F.3d at 738. A court may find a default to have been willful where the "conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Id.* Here, Jacobson and Forte's willfulness has been repeatedly established in the various prior court orders and nothing in the current motion justifies vacating those findings. Remaining silent while their attorney made statements in open court that they knew were untrue constitutes wilfullness, and where clients witness counsel's conduct and allow him to proceed, they must bear the consequences of counsel's conduct. *See Federal Home Loan Mtg. Corp. v. Toles,* 1996 WL 19201, *5 (E.D.N.Y. Jan. 11, 1996).

Even if Jacobson and Forte were not complicit in Pelsinger's conduct, willful discovery defaults by counsel are attributable to them as clients. The Second Circuit has "consistently declined to relieve a client under subsection 60(b)(1) of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of court, or his inability to efficiently manage his caseload." *Samuels v. Northern Telecom, Inc.,* 942 F.2d 834, 837 n.2 (2d Cir. 1991)(internal quotation marks omitted). "In typical civil proceedings, the Second Circuit has very rarely grant[ed] relief under Rule 60(b)(6) for cases of alleged attorney failure or misconduct, because one voluntarily cho[oses] his attorney as his representative in the action and thus cannot avoid the consequences of the acts or omissions of this freely selected agent." *Fraser v. United States,* 2006 WL 2792760, *4 (E.D.N.Y. Sept. 1, 2006)(internal punctuation omitted)(citing *Harris,* 367 F.3d at 81); ; *see also*

*McNulty,* 137 F.3d at 738 (conduct of attorney is normally imputed to client, for allowing party to evade consequences of acts or omissions of freely selected agent would be wholly inconsistent with our system of representative litigation in which each party is deemed bound by acts of his lawyer-agent). Jacobson and Forte suggest in their motion papers that Pelsinger was not their choice, but was chosen for them by Luca. They could at any time, however, have chosen different counsel for themselves, and instead maintained their representation by him.

While attorney conduct may be fairly imputed to a client absent the client's showing that the client was diligent and the attorney made false assurances to the client, that does not apply here. *See Canini v. United States Dep't of Justice,* 2008 WL 818696, *6 (S.D.N.Y. Mar. 24, 2006). Although Jacobson and Forte allege false assurances by Pelsinger that they had already produced everything they needed to produce, that does not absolve them, because, as set forth *supra*, they were not themselves diligent and could not have reasonably believed his assurances when they observed the court proceedings that made clear: (1) their continuing obligation to produce the documents, which they well knew were in their possession, and (2) that the plaintiff was seeking the very sanctions they now want to overturn based on their failure to produce those documents. Their defaults were willful and should not be vacated.

Further, they have demonstrated no meritorious defense, and the vacatur of the defaults at this late date would further prejudice the plaintiff in this matter. For all of these reasons, I recommend that the motion to vacate be denied both as untimely and on the merits.

**The Pelsinger File and Pelsinger's Conduct in this Litigation:**

The defendants ask the court for an order directing Pelsinger to turn over his entire file in this matter to them. Pelsinger allegedly told Stein he would bring the remaining file with him to

the hearing on this matter, but he did not do so. DE[260], Ex. A, 84:14. The court allowed him until the next day of the hearing to produce the file, and he ultimately produced 19 pages of correspondence, claiming that those pages represented all of the file that had not previously been produced. Forte and Jacobson question the authenticity of some of these pages, noting differences in letterhead font and other details, and suggesting that three of the letters were created for the court-ordered production, but never actually sent by Pelsinger to his clients. *Id.*, p. 6. A determination of whether those letters were fabricated goes far beyond the matter now before the court - whether the default by Jacobson and Forte should be vacated - and is instead more properly considered by a Disciplinary Committee inquiry, along with the other allegations against Pelsinger. It might also enter in to any malpractice action that the defendants may choose to bring. It is up to Forte and Jacobson, however, to initiate either or both of those proceedings. Their allegations about what Pelsinger did or did not do go far outside the scope of this Court's appropriate area of inquiry. They are free to bring the alleged events to the attention of the New York State Disciplinary Committee or the Committee on Grievances of the United States District Court for the Eastern District of New York, or both.

As to the file itself, Pelsinger was ordered to produce it at the motion hearing, and it would appear that he has produced all that he is ever going to produce in regard to Forte and Jacobson. Any further order that demanding production would be pointless.

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically filed on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and

6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
June 21, 2011

       /s/ William D. Wall
      WILLIAM D. WALL
      United States Magistrate Judge